**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OMAR MOSQUEDA LARA,<br>Petitioner,<br>v.<br>DAVID J. VENTURELLA, et al.,<br>Respondents. | No. 5:26-cv-4781-DSR<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE** |

## 1. INTRODUCTION AND PROCEDURAL BACKGROUND

Petitioner Omar Mosqueda Lara is a noncitizen who has been detained in Immigration and Customs Enforcement ("ICE") custody since August 5, 2026. See Pet. (Doc. No. 1) at ¶ 1. On August 21, 2026, he filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging his ongoing detention as violative of, inter alia, his right to due process. See Doc. No. 1. The Petition names as Respondents the Acting Director of ICE, the Secretary of Homeland Security, the United States Attorney General, the Director of Enforcement and Removal Operations for the Los Angeles Field Office of ICE, and the Facility Administrator of the Desert View Annex where Petitioner is detained, each in his or her official capacity (collectively "Respondents"). Id.

Petitioner also voluntarily consented under 28 U.S.C. § 636 to have a Magistrate Judge conduct all further proceedings in this case, including trial and the entry of judgment. See Doc. No. 4. The case became fully consented 3 days

later pursuant to the United States Attorney's Office's General Consent to Disposition by Magistrate Judge in Immigration Cases. See General Order 26-05 at Ex. "A" (Doc. No. 6); see also Doc. No. 7.

On August 23, 2026, the Court issued the Notice of General Order 26-05 and Briefing Schedule. See Doc. No. 6. Therein, the Court "direct[ed] Respondents to show cause why the writ of habeas corpus should not be granted," and set an expedited briefing schedule on the Petition. Id. at 1-2. Pursuant to that expedited briefing schedule, Respondents' Answer was due on August 31, 2026. Id. at 2.

Respondents did not file an Answer by August 31, however. On September 4, 2026, the Court entered an Order to Show Cause re Failure to Answer Petition and Show Cause Why the Writ of Habeas Corpus Should Not Be Granted. See Doc. No. 9. Therein, the Court ordered Respondents to show cause no later than 9:00 a.m. on September 8th why they had failed to comply with the Court's Order requiring them to answer the Petition. Id. That Order to Show Cause further expressly warned Respondents that failure to respond "MAY BE TREATED AS A CONCESSION THAT PETITIONER IS ENTITLED TO THE RELIEF SOUGHT, OR AT LEAST THAT THE FACTUAL ALLEGATIONS IN THE PETITION ARE TRUE." Id. (capitalization in original). Despite this additional opportunity to answer the Petition, and express warning of the consequences for failure to do so, Respondents still did not file an Answer, or otherwise respond to the OSC.

The Court has read and considered the papers filed by Petitioner because those are the only papers filed in this case. The Court deems Respondents' lack of response – to the Petition, to the OSC contained in the Notice of General Order 26-05, and to the September 4, 2026, Order to Show Cause – as consent to granting the relief requested. See Local Rule 7-12. For that reason alone, and independently based on the allegations of the verified Petition for the reasons discussed below, the Court GRANTS the Petition and issues a Writ of Habeas Corpus ordering Petitioner's immediate release from immigration custody.

**2. FACTUAL BACKGROUND**

The Court sets forth a summary of the relevant factual background based on the facts alleged in the verified Petition. Respondents had the opportunity to dispute those facts, but they failed to file any response, let alone specifically dispute Petitioner's verified allegations. Accordingly, the facts alleged in the Petition are undisputed and have been conceded by Respondents. See Local Rule 7-12.

Petitioner is a native and citizen of Mexico. See Pet. at ¶ 10. He first presented himself at the Otay Mesa Port of Entry on or about February 7, 2013. Id. at ¶ 16. After being detained by immigration officials for two months and being served a Notice to Appear on April 9, 2013, Petitioner was released from immigration custody in May 2013. Id. at ¶¶ 16-17.

After his 2013 release, Petitioner lived freely in the community for nearly 13 years. Id. at ¶ 22.[1] He appeared for every required immigration hearing and complied with ICE reporting requirements. Id. at ¶ 23. Although Petitioner does not have any convictions for violent offenses or a history of harming other people or property, he does have two driving-under-the-influence cases, one from 2010 and one from 2017. Id. at ¶¶ 23-24. As a result, Petitioner participated in Alcoholics Anonymous and required programing. Id. at ¶ 24.

On August 5, 2026, ICE officers arrested Petitioner without any notice of intent to revoke his release and no meaningful opportunity to contest his re-detention. Id. at ¶ 25. He was transported to ICE's Desert View Annex in Adelanto, where he has remained detained since. Id. at ¶¶ 25, 28. Petitioner now challenges

[1] At some point after his release, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). See Pet. at ¶ 18. After a merits hearing, the Immigration Judge found that Petitioner was credible, and he had suffered past persecution because of his sexual orientation. Id. On February 6, 2024, however, the Immigration Judge denied relief and ordered Petitioner removed to Mexico. Id. at ¶ 19. That decision is presently on appeal to the Board of Immigration Appeals. Id. at ¶¶ 20-21. As such, the Immigration Judge's removal order is not administratively final. Id. at ¶ 21.

his detention as unlawful in violation of his due process rights and seeks an order compelling his immediate release. Id. at 9, prayer ¶ B.

**3. LEGAL STANDARD**

Habeas relief extends to those who can show they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Although Congress has barred courts from reviewing certain discretionary decisions concerning detention or release of noncitizens subject to removal proceedings, see 8 U.S.C. §§ 1226(e), 1252(g), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law.'" Martinez v. Clark, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)), vacated on other grounds by ___ U.S. ___, 144 S. Ct. 1339, 218 L.Ed.2d 418 (2024). Petitioner makes such reviewable claims here.

Title 28 U.S.C. § 2243 provides that a Court "entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." Here, via General Order 26-05, the Court directed Respondents to show cause why the writ should not be granted. See Doc. No. 6. Pursuant to Section 2243, Respondents were required in their Answer to certify "the true cause of the detention." 28 U.S.C. § 2243.

**4. DISCUSSION**

**A. Petitioner's Re-Detention Violates Due Process**

Petitioner argues that his August 5, 2026, re-detention and resulting ongoing immigration custody violates, inter alia, his right to procedural due process. See Pet. at ECF p. 8. Respondents have failed to respond to the Petition. Such failure can be deemed consent to granting the relief requested. See Local Rule 7-12; Doc. No. 9. Not only is the writ proper here based on Respondents' failure to respond to the Petition (and the General Order, and this Court's Order to Show Cause), but

habeas relief is also independently appropriate on the undisputed facts established in the verified Petition.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const. amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" Id. at 990 (quoting Singh, 638 F.3d at 1203).

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." Brewster v. Bd. of Ed., 149 F.3d 971, 982 (9th Cir.1998). The first step is to determine whether the individual possesses a liberty or property interest that triggers due process protections. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). If such a constitutionally protected interest exists, the second step applies a three-step balancing test described in Mathews v. Eldridge to assess what procedural safeguards are required. Mathews v. Eldridge,

424 U.S. 319, 334-35 (1976). Only after establishing a constitutionally protected interest does the analysis proceed to the second step.

**i. Petitioner Has a Constitutionally Protected Liberty Interest in His 2013 Conditional Release From Immigration Detention**

It is uncontroverted that Petitioner initially presented himself at the port of entry in February 2013, was detained, and then released into the United States. See Pet. at ¶¶ 16, 17.[2] It is also undisputed that since he was released, Petitioner "appeared for every required immigration hearing and complied with ICE reporting requirements." Id. at ¶ 23.

Once Petitioner was released from immigration custody, he acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F. Supp. 3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Deprivation of that protected interest required due process of law. The Court now turns to whether Respondents afforded Petitioner such due process.

[2] The fact that Petitioner was released from custody necessarily means that he demonstrated to the satisfaction of immigration officials that his release would not pose a danger to property or persons and that he was likely to appear for any future proceeding. See Fernandez Lopez v. Wofford, No. 1:25-cv-1226-KES-SKO, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

**ii. The Matthews Balancing Test**

To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Mathews, courts balance the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."). Here, the balance favors Petitioner.

**a. Private Interest**

Petitioner's private interest here is substantial. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process Clause] protects." Id. at 690. Petitioner has a considerable liberty interest in maintaining his life out of custody. In the 13 years between the time immigration officials released Petitioner and when they re-detained him on August 5, 2026, Petitioner lived freely in the United States, during which time he applied for asylum, reported regularly to immigration authorities, lived in the community, and generally formed an expectation that he would not be subject to detention. See Pet. at ¶¶ 17-18, 23.

In consideration of the guiding principles and relevant authority, the Court finds that Petitioner's interest in remaining at liberty is substantial.

**b. Risk of Erroneous Deprivation**

Regarding the second Mathews factor, the risk of erroneous deprivation here is significant because Petitioner has not been afforded any opportunity to contest the revocation of his release. In fact, he has not even been told the reason why his release was revoked and he was re-detained. Id. at ¶¶ 26-27. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690. "In releasing Petitioner on humanitarian or significant public benefit parole," the Government "necessarily found Petitioner did not pose a significant flight risk or danger to the community." Medrano-Rocha v. Santacruz, No. CV 26-00404-KK-AGRX, 2026 WL 411355 at *4 (C.D. Cal. Jan. 23, 2026) (citing 8 C.F.R. § 212.5(b)).

The question of whether there are any changed circumstances which allow Respondents to revoke Petitioner's release and re-detain him is the entire point of requiring notice and an opportunity to be heard before Petitioner was deprived of his substantial liberty interest in his conditional release and subjected to several weeks of detention. A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence. This is a significant procedural safeguard. Without written notice and a meaningful, individualized hearing, "the risk of an erroneous deprivation of liberty is high because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." Fernandez v. Semaia, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229 at *5 (C.D. Cal. Jan. 13, 2026). As one court has reasoned:

> ICE revoked Petitioner's release at a scheduled check-in based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in

> advance, and without any meaningful opportunity to be heard. [Citations omitted]. Proceeding on untested contractor and agency records, with no mechanism for explanation or correction, creates a significant risk of error. Moreover, Petitioner had previously been found suitable for humanitarian parole, which requires that a noncitizen "present neither a security risk nor a risk of absconding[.]" [Citation omitted]. A brief pre-deprivation hearing would have substantial value in testing both the factual and legal basis for re-detention.

Asad v. Noem, No. 26-cv-620, 2026 WL 775628, at *3 (W.D. Wash. Mar. 19, 2026). Here, we know even less about the justification (if any) for Petitioner's re-detention. Respondents have offered nothing in that regard – either to Petitioner or to this Court. Thus, the second Mathews factor similarly favors Petitioner.

**c. Government Interest**

Regarding the third Mathews factor, Respondents do not assert any countervailing interest (because they did not file a response to the Petition). Nevertheless, "[o]f course, the government and the public have a significant interest in 'enforcement of the United States's immigration laws,' [record citation omitted], but that includes an interest in 'upholding procedural protections against unlawful detention.'" Nguyen v. Noem, 817 F. Supp. 3d 889, 900 (C.D. Cal. 2025) (second internal quote from Pinchi, 792 F.Supp.3d at 1037). Thus, the governmental interest in this prong of the Mathews analysis is not an interest merely in being able to revoke a non-citizen's parole, but rather the interest in summarily revoking that status without any notice or opportunity to be heard. Courts have routinely recognized that such interest is "low." See, e.g., Gourav v. Janecka, No. EDCV 26-1253 MWF (DSR), 2026 WL 966568, at *3 (C.D. Cal. Apr. 7, 2026); Fernandez Lopez v. Wofford, No. 1:25-CV-01226-KES-SKO (HC), 2025 WL

2959319, at *6 (E.D. Cal. Oct. 17, 2025); Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025); see also Cornejo v. Andrews, No. 1:25-CV-02062 JLT HBK, 2026 WL 237748, at *10 (E.D. Cal. Jan. 29, 2026) (the government interests in protecting the public from harm and preventing the noncitizen's flight "are adequately protected by having a neutral adjudicator evaluate whether a noncitizen presents these risks."); Telenchana v. Hermosillo, No. 2:26-cv-00363-GJL, 2026 WL 696806, at *10 (W.D. Wash. Mar. 12, 2026) ("[T]he governments interest in [petitioner's] re-detention without adequate process is minimal or non-existent."); Chel v. Larose, No. 26CV1114-LL-BLM, 2026 WL 926902, at *3 (S.D. Cal. Apr. 6, 2026) ("[T]he government's interest in detaining Petitioner without notice, reasoning, and a hearing is low."). Thus, the third Mathews factor also favors Petitioner.

Therefore, the Mathews balance tips decidedly in favor of Petitioner on this record. The Court thus concludes that Petitioner's re-detention on August 5, 2026, occasioned by the de facto revocation of his release without notice or a pre-deprivation hearing, violated Petitioner's procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez, 2025 WL 2959319, at *6 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

**B. Immediate Release is the Appropriate Remedy**

Given this violation of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, No. 5:25-cv-2694-KK-ADSx, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's prior release on parole before his current re-detention. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Restoring Petitioner to the status quo also means release under the same parole conditions that were in place before the unconstitutional deprivation of his release. For the same reason that Respondents may not revoke Petitioner's parole without affording him due process, they also may not change the conditions of that parole – including by adding new conditions such as electronic monitoring or other alternatives to detention – without affording Petitioner due process. Return to the status quo similarly means return to Petitioner any personal property and documents seized from him at the time of his detention.

Finally, Petitioner requests in the Petition that the Court "[e]njoin any future re-detention based on the same circumstances unless Respondents first provide written notice and a pre-deprivation hearing before a neutral decisionmaker,

absent a genuine emergency." Pet. at 10, prayer ¶ G. Though given the opportunity to address that issue in their response, Respondents did not file a response to the Petition. The Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See Perez Bueno v. Janecka, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *4 (C.D. Cal. Feb. 5, 2026) (ordering that the petitioner be released from immigration detention and that he not be re-detained without a pre-deprivation hearing); Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)). Habeas relief is not limited to "discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted." Carafas v. LaVallee, 391 U.S. 234, 239 (1968). Title 28 U.S.C. § 2243 expressly provides that "[t]he court shall . . . dispose of the matter as law and justice require."

A permanent injunction may be entered, at the discretion of the District Court, where a petitioner shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds Petitioner has made such a showing here. First, Petitioner has suffered an irreparable injury by being re-detained without due process of law, and would again if Respondents repeat such conduct. There is no indication that Respondents' well-publicized efforts to detain non-citizens no longer pose a threat to Petitioner of a repeat of

the same deficient re-detention as occurred in August. Second, legal remedies such as damages would be inadequate to cure the unconstitutional loss of his liberty while he is in detention awaiting court action on another habeas petition again challenging the deprivation of his due process rights. And finally, the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they again seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and sue to win his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing. Thus, a permanent injunction prohibiting Respondents from repeating the same unconstitutional re-detention of Petitioner that necessitated this habeas case is appropriate.

**C. Petitioner's Remaining Claims and Requests for Relief**

Because the Court concludes that Petitioner is entitled to release on procedural due process grounds, it is unnecessary to reach his alternative argument on statutory and substantive due process grounds. See generally Pet. at pp. 7, 9. The Court notes that Petitioner also requested an award of reasonable attorney's fees and costs. Id. at p. 10, prayer ¶ H. The Court will consider requests for costs and attorney's fees upon a proper motion in compliance with Local Rules 54-2 (costs) and 54-7 (attorney's fees).

**5. CONCLUSION**

Petitioner is presently in custody of Respondents in violation of the Constitution or laws or treaties of the United States; thus, a Writ of Habeas Corpus should issue pursuant to 28 U.S.C. § 2241 compelling his immediate release.

IT IS THEREFORE ORDERED that:

1. The Petition for Writ of Habeas Corpus is GRANTED.
2. Respondents shall immediately release Petitioner **OMAR MOSQUEDA LARA (A-200-193-351)** from custody, reinstate his parole under the same conditions that were in place before his re-detention on August 5, 2026, and

return to him any personal property and documents seized from him at the time of his detention.

3. Respondents shall also provide Petitioner with a copy of this Order at or near the time of release.
4. Within two days of the date of this Order, Respondents shall file with the Court a status report confirming Petitioner's release and return of any personal property and documents.
5. Respondents are enjoined from re-detaining Petitioner without first providing him with notice and an opportunity to be heard on the reasons for the proposed revocation of his parole.
6. The Court will issue Judgment consistent with this Order. Any fee motion must be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and this Court's Local Rules. The Court retains jurisdiction to adjudicate any such motion or other collateral enforcement issues.

IT IS SO ORDERED.

DATED: September 9, 2026

HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE